UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANDOZ INC.,

                              Plaintiff,

        -against-

MEDWIZ SOLUTIONS, LLC; BLANCHE REISS;
BATYA GORELICK; and UNKNOWN
MEMBERS OF MEDWIZ SOLUTIONS, LLC 1–
10,

                              Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/12/2022__

No. 20-CV-6943 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Sandoz Inc. ("Plaintiff" or "Sandoz") commenced this action on August 27, 2020 against Defendants Medwiz Solutions, LLC ("Medwiz"), unknown members of Medwiz, and individuals Blanche Reiss ("Reiss") and Batya Gorelick ("Gorelick") (together, "Individual Defendants") (collectively, "Defendants"). (Complaint ("Compl."), ECF No. 1.) Plaintiff asserts claims of fraud/fraudulent inducement, negligent misrepresentation, unjust enrichment, and claims under the Racketeer Influence and Corrupt Organization Act ("RICO") pursuant to 18 U.S.C. § 1961 *et seq.* in connection with Defendants' alleged submission of falsified debit memos to Plaintiff in order to receive return credits on nonrefundable products. (*Id.*) Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint. (ECF No. 22.)

For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint and are assumed as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.      Sandoz's Return Goods Policy

Plaintiff Sandoz is a manufacturer and seller of generic pharmaceuticals and biosimilars. (Compl. ¶ 12.)  Sandoz sells its products directly to certain customers, including its Authorized Servicing Wholesalers.  (*Id.*)  An Authorized Servicing Wholesaler ("ASW") may purchase products from Sandoz and sell the products to other distributers and pharmacies.  (*Id.* ¶ 13.) Customers who purchased Sandoz products directly from an ASW may have an indirect contract with Sandoz.  (*Id.* ¶ 14.)

Sandoz published a Return Goods Policy ("Return Policy") dated January 1, 2015 detailing the policy and procedures for returning Sandoz products.  (*Id.* ¶ 15; *see* Exhibit A to Plaintiff's Complaint, ECF No. 1-1.)  Under the Return Policy, purchasers with a direct or indirect contract with Sandoz may return and receive credit for Sandoz products that are within six months of its expiration date or up to 12 months of its post-expiration date, subject to other terms and conditions. (Compl. ¶ 16.)

Periodically, Sandoz sells products that are within one year of their expiration dates ("short-dated products") at significantly discounted prices.  (*Id.* ¶ 17.)  Sales of short-dated products are final and such products are not eligible for credit for any customer, regardless of whether the customer has a direct or indirect contract with Sandoz.  (*Id.*)  When short-dated products are sold, the orders state that the discounted purchases are final and not returnable for credit.  (*Id.* ¶ 18.)  Specifically, all short-dated purchase orders state that the offer is for short-dated products limited to the quantities and dating listed, that no rebates apply to these products, that all quantities listed are not returnable for credit, that the products are sold on a first-come, first-serve basis, and that the customer agrees that all short-dated products will be labeled as short-dated inventory on all purchase orders and invoices.  (*Id.* ¶ 19.)

For returns that allow for credit under the Return Policy, the customer receives a credit in the amount of the lower of the current or most recent contract price available to the customer, a standard selling price as determined by Sandoz if no contract exists, or the actual purchase price paid for the product.  (*Id.* ¶ 20.)  Customers may also return products that are not eligible for credit for the limited purposes of processing and proper disposal.  (*Id.* ¶ 21.)

## II.     The Return Process

The Return Policy instructs customers on how to return Sandoz products.  (*Id.* ¶ 22.)  To submit a return, the returning facility sends the product to Sandoz's third-party processor FedEx Supply Chain, formerly known as Genco Pharmaceutical Services ("FedEx/Genco").[1]  (*Id.* ¶ 23.) Each return request submitted to FedEx/Genco must be accompanied by a "debit memo" which provides detailed information regarding the returned product.  (*Id.* ¶ 25.)  The debit memo requires information regarding: the returning facility's name, address, and DEA number; the name of the ASW from which the product was purchased (for indirect contracts); and the product description, batch, or lot number, National Drug Code ("NDC"), expiration date, and quantity returned.  (*Id.* ¶ 26.)  Sandoz relies on the information in the debit memo to determine whether a product is eligible for credit and the appropriate amount for credit.  (*Id.* ¶ 27.)  Sandoz will not issue any credit for returned products if the returning facility fails to provide the required information in the debit memo or if the debit memo shows that the returning facility does not have a direct or indirect contract with Sandoz.  (*Id.* ¶¶ 28–29.)  A returning facility can include a proposed value for the returned product in the debit memo, but Sandoz ultimately determines the credit amount based on the documentation provided.  (*Id.* ¶ 30.)  A customer with a direct contract with Sandoz receives

---

[1] FedEx/Genco was Plaintiff's third-party processor between 2015 and 2017.  (*Id.* ¶ 23.)

credit directly from Sandoz's customer support and a customer with an indirect contract receives credit from Sandoz through FedEx/Genco in the form of a check.  (*Id.* ¶¶ 31–32.)

### III.    Defendants' Return of Sandoz Products

Starting around December 2015, Defendants purchased products at highly discounted prices from non-ASW entities and, within several days or weeks thereafter, submitted debit memos and returned such products to FedEx/Genco for reimbursements from Sandoz.  (*Id.* ¶ 34.)  All products returned by Defendants had less than six months remaining prior to its expiration date or were already expired but did not exceed the expiration date by more than 12 months.  (*Id.* ¶ 39.) Since these products were purchased through non-ASW entities, they were not eligible for credit under the Return Policy.  In their debit memos, Defendants identified Kinray Inc. ("Kinray"), an ASW, as the primary wholesaler and McKesson Pharmaceutical ("McKesson"), an ASW, as the secondary wholesaler, despite not having purchased such products from Kinray or McKesson.  (*Id.* ¶ 40.)  Defendants also identified Blanche Reiss and Batya Gorelick as specific contacts in the debit memos.  (*Id.* ¶ 41.)  In response to Defendants' submissions, FedEx/Genco, which was later reimbursed by Sandoz, issued credits to Defendants via check.  (*Id.* ¶ 36.)

The volume and frequency of Defendants' returns escalated over time.  (*Id.* ¶ 38.)  Between December 2015 and October 2017, Defendants submitted 78 debit memos and returned thousands of units of hundreds of various Sandoz products to FedEx/Genco, receiving $1,880,533.16 in credited fees.  (*Id.*)

From July to December 2016, Defendants returned approximately 2,912 units of nonrefundable Fluocinolone Acetonide to Sandoz and received compensation for such returned products.  (*Id.* ¶ 42.)  A tracing of the 2,912 units of Fluocinolone Acetonide uncovered that the units were sold by Sandoz to Masters Pharmaceuticals ("Masters") and/or Auburn Pharmaceuticals

("Auburn") (collectively, "Final Sale Purchasers") as final sale products that were not refundable. (*Id.* ¶¶ 43–44; *see* Exhibit B to Plaintiff's Complaint, ECF 1-2.)  Between September and October 2015, Sandoz sold approximately 8,579 units of Fluocinolone Acetonide with NDC 168-0059-60 and lot/batch number ("Lot Number") FA7747 as final sale products with expiration date of February 28, 2017 to Masters for $8,579.00 and approximately 72 units of the same to Auburn for $72.00.  (*Id.*)  Between September 2015 and December 2016, Defendants purchased these final sale products sold to Masters and Auburn at reduced prices.  (Compl. ¶ 45.)  Then, from July to December 2016, Defendants submitted 12 debit memos requesting credit for 2,768 units of Fluocinolone Acetonide with NDC 168-0059-60 and Lot Number FA7747 at full wholesale value. (*Id.* ¶ 46.)  In their debit memos, Defendants identified Kinray and McKesson as the primary and secondary wholesalers from which Defendants purchased the products in order to mislead and cause Sandoz to issue credit for nonrefundable products.  (*Id.* ¶ 47; *see* Exhibit C to Plaintiff's Complaint, ECF 1-3.)  As a result of Defendants' representations, Sandoz issued Defendants $490,648.62 in credits.  (Compl. ¶ 48.)

From December 2016 to March 2017, Defendants returned approximately 2,500 units of CalcipotrieneBeta to Sandoz for credit.  (*Id.* ¶ 49.)  A tracing of the 2,500 units uncovered that the product was sold by Sandoz to Final Sale Purchasers as final sale products.  (*Id.* ¶ 50.)  Sandoz had sold 13,378 units of CalcipotrieneBeta with NDC 00781-7165-35 and Lot Number 8342A with an expiration date of February 28, 2017 to Masters.  (*Id.* ¶ 51; *see* Exhibit D to Plaintiff's Complaint, ECF 1-4.)   On December 1, 2016, Masters sold Medwiz 2,500 units of CalcipotrieneBeta with NDC 00781-7165-35 and Lot Number 8342A.  (Compl. ¶ 52; *see* Exhibit E to Plaintiff's Complaint, ECF 1-5.)  Immediately after purchasing the products from Masters, from December 2016 to March 2017, Defendants submitted 12 debit memos requesting credit for

2,500 units of CalcipotrieneBeta of NDC 00781-7165-35 and Lot Number 8342A at full wholesale value.  (Compl. ¶ 54; *see* Exhibit F to Plaintiff's Complaint, ECF 1-5.)  In the debit memos, Defendants identified Kinray and McKesson as the primary and secondary wholesalers from which Defendants purchased the returned products.  (Compl. ¶ 55.)  As a result, Sandoz issued Defendants $785.097.81 in credits.  (*Id.* ¶ 56.)

After reviewing its files regarding the returned products from Defendants, Sandoz determined that Defendants repeatedly purchased and returned nonrefundable, short-dated products.  (*Id.* ¶ 57.)  Upon this discovery, Sandoz began rejecting return request on final sale products submitted by Defendants.  (*Id.* ¶ 59.)  Defendants never disputed such rejections.  (*Id.*)

## IV.    Motion to Dismiss

On August 27, 2020, Plaintiff commenced the instant action against Defendants, asserting claims of fraud/fraudulent inducement, negligent misrepresentation, unjust enrichment, and RICO violations in connection with Defendants' alleged submission of falsified debit memos to Plaintiff in order to receive refunds on nonrefundable products.  (ECF No. 1.)  On February 2, 2021, Defendants filed a motion to dismiss all counts of Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Defendants' Notice of Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs. Mot."), ECF No. 22.)  Plaintiff filed a memorandum in opposition.  (Plaintiff Sandoz Inc.'s Memorandum in Opposition to motion to Dismiss Filed by Defendants Medwiz Solutions, LLC, Blanche Reiss and Batya Gorelick ("Pl. Opp."), ECF No. 23.)  Defendants filed a reply in support of their motion.  (Defendants' Memorandum of Law in Further Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs. Reply"), ECF No. 24.)

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

**DISCUSSION**

In its Complaint, Plaintiff asserts claims of fraud/fraudulent inducement, negligent misrepresentation, unjust enrichment, and RICO violations. (*See* Compl.) Defendants seek to dismiss all claims for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (*See* Defs. Mot.) The Court addresses each claim below.

**I.     Fraud/Fraudulent Inducement Claim**

Plaintiff bases its fraud/fraudulent inducement claim on representations Defendants made in the debit memos submitted to FedEx/Genco that the returned products were obtained from Kinray and McKesson and were eligible for credit from Sandoz. (Compl. at 15–16.)

Under New York law, "to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which

the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)); *see also Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13 CIV. 3956, 2014 WL 837050, at *9 (S.D.N.Y. Mar. 3, 2014). While the rules of federal pleading typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements. *See* Fed. R. Civ. P. 9(b) (requiring parties to "state with particularity the circumstances constituting fraud or mistake."). To meet Rule 9(b)'s pleading standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). "[A] plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

### A. Claim Against Defendant Medwiz

Defendants make several arguments as to why this Court should dismiss Plaintiff's fraud/fraudulent inducement claim against Medwiz. First, Defendants contend that Plaintiff has failed to plead facts to support elements of a fraud/fraudulent inducement claim. (Defs. Mot. at 6.) Defendants claim that Medwiz's listing of Kinray and McKesson as the primary and secondary wholesalers in the debit memos were nonmaterial, truthful representations made to FedEx/Genco and are not false statements made to Sandoz. (*Id.*) The Court disagrees and finds that Plaintiff alleged with particularity sufficient facts to establish elements of a fraud/fraudulent inducement

claim against Medwiz under New York law.  Plaintiff pled that Defendant Medwiz misrepresented the products as eligible for return credit by knowingly indicating that Medwiz had purchased the products from Kinray and McKesson in the debit memos, even though Medwiz did not in fact purchase the products from either ASWs, that Plaintiff relied upon Defendants' representations to determine whether a returned product is eligible for credit, that Defendants made the misrepresentations to FedEx/Genco with the intent to defraud and deceive Sandoz into issuing credits for nonrefundable products, and that Sandoz was in fact induced to issue substantial credits to Medwiz for these products.  (Compl. at 6–10.)  Plaintiff's fraud claims were pled with particularity because Plaintiff identified the statements from Defendants that Kinray and McKesson were the primary and secondary wholesalers in the debit memos as the misrepresentations, stated that Defendants submitted the alleged fraudulent debit memos from approximately December 2016 to March 2017, and provided detailed explanations and accompanying exhibits as to why such representations were false.  (*Id.*)

Second, Defendants argue that Plaintiff has failed to allege any duty owed by Defendants to Sandoz and that a breach of duty owed is a requirement for bringing a fraudulent inducement claim without a contract.  (Defs. Mot. at 5–6.)  The Court agrees with Plaintiff that Defendant's assertions is at odds with New York law.  New York law makes clear that claims for fraudulent inducement require a plaintiff to prove five elements: "(1) a material misrepresentation or omission of fact, (2) made by defendant with knowledge of its falsity[,] (3) and an intent to defraud[,] (4) reasonable reliance on the part of the plaintiff[,] and (5) resulting damage to the plaintiff." *Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 CIV. 7933 (ER), 2021 WL 4332258, at *12 (S.D.N.Y. Sept. 22, 2021) (quoting *Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747, 772 (S.D.N.Y. 2014) and citing *Bruce v. Martin*, Nos. 87 Civ. 7737 (RWS), 90 Civ. 0870 (RWS), 90 Civ. 4651

(RWS), 1993 WL 148904 (S.D.N.Y. Apr. 30, 1993)).  Defendants rely upon a quotation from *Bruce v. Martin* that was taken out of context from that court's discussion of how a fraudulent inducement claim must differ from a breach of contract claim and does not otherwise add a sixth element of breach of duty to a claim of fraudulent inducement.

Third, Defendants maintain that their debit memos were truthful because Kinray and McKesson are in fact primary and secondary wholesalers to Medwiz.  (Defs. Mot. at 6.) Defendants fault the debit memos for not specifically asking for the "[n]ame of the supplier from which products were purchased."  (*Id.*)  This is an issue of fact that is not appropriate for resolution at this stage.

Accordingly, Defendants' motion to dismiss Plaintiff's fraud/fraudulent inducement claim against Medwiz is denied.

## B.  Claim Against Individual Defendants

Defendants argue that Plaintiff has failed to plead fraud with particularity as to Defendants Reiss and Gorelick and merely "vaguely attributed" the Individual Defendants to the alleged fraudulent statements.  (Defs. Mot. at 5.)  The Court disagrees.  Unlike in *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993), the Complaint here plainly links Individual Defendants to the alleged fraudulent statements by stating that Reiss and Gorelick were listed as specific contacts in the alleged fraudulent debit memos.  (Compl. ¶ 41.)  This meets the heightened pleading requirements of Rule 9(b).

As discussed *supra*, Plaintiff has sufficiently pled with particularity all other elements of a fraud/fraudulent inducement claim.  Accordingly, Defendants' motion to dismiss Plaintiff's fraud/fraudulent inducement claim against Defendants Reiss and Gorelick is denied.

## II.        Negligent Misrepresentation Claim

Under New York law, a claim for negligent misrepresentation requires the plaintiff to plausibly allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771 (ER), 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (citing *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that   reliance   on   the   negligent misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)). "[G]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Marc J. Bern*, 2018 WL 2943784, at *6 (quoting *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 296–97 (2011)). Factors bearing on this inquiry include "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Marc J. Bern*, 2018 WL 2943784, at *6. Because negligent misrepresentation sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standards. *See, e.g.*, *Yoomi Babytech*, 2021 WL 4332258, at *13.

Defendants assert that Plaintiff has not alleged facts demonstrating a fiduciary relationship between the parties. (Defs. Mot. at 8.) In the Complaint, Plaintiff pleads that Defendants had knowledge of who they purchased the products from and whether the Sandoz products Medwiz purchased were refundable, that Defendants were aware that pursuant to the Return Policy Sandoz

only provided credit to customers with credit-eligible products, and that Sandoz justifiably relied on Medwiz's false representations in the debit memos that the products were refundable.  (Compl. ¶¶ 1, 34, 47, 96–99.)  The special relationship element is satisfied where a plaintiff pleads that a defendant holds unique knowledge.  *See eCommission Sols., LLC v. CTS Holdings, Inc.*, No. 15-CV-2671 (KBF), 2017 WL 985881, at *8 (S.D.N.Y. Mar. 13, 2017) (finding pleading that defendant had unique knowledge over its internal data procedures as satisfying the element).  Accordingly, the Court finds that the Complaint satisfies the elements and Plaintiff has sufficiently pled with particularity all elements of a negligent misrepresentation claim.  Defendants' motion to dismiss the negligent misrepresentation claim is denied.

### III.    Unjust Enrichment Claim

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted).  However, an unjust enrichment claim "'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (N.Y. 2012)).  If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available.  *See Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) ("'[U]njust enrichment is not a catchall cause of action' and it 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) ("an unjust

enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'").

Defendants argue Plaintiff's unjust enrichment claim is duplicative of its fraudulent inducement tort claim.  (Defs. Mot. at 9.)  Indeed, Plaintiff appears to be merely restating the tort claim in its Complaint.  Plaintiff incorporates the tort allegations and stated that "[b]ased on the foregoing, Defendants were enriched." (Compl. ¶¶ 101–103.)  However, courts have permitted an unjust enrichment claim as an alternative theory of recovery.  *See Glob. Packaging Servs., LLC v. Glob. Printing & Packaging,* 248 F. Supp. 3d 487, 496 (S.D.N.Y. 2017).  Here, Plaintiff argues that "should this Court ultimately determine that the tort claims of Sandoz fail, Defendants will still be in possession of $1,880,533.16 to which it was not entitled . . . ." (Pl. Opp. at 12.)  Thus, to the extent Plaintiff seeks to assert an unjust enrichment claim as an alternative theory of recovery and not duplicative of other claims asserted, the motion to dismiss this claim is denied.

## IV.    RICO Claim

To demonstrate a RICO violation, a plaintiff must plausibly allege "that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participating in an enterprise, the activities of which affected interstate or foreign commerce." *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 466 (S.D.N.Y. 2017) (quoting *Defalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).  Thus, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to the business or property as a result of the RICO violation." *Lundy v. Cath. Health Sys. Of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotations omitted).

### a. Predicate Acts

To recover under RICO, a plaintiff must show that defendants engaged in "racketeering activity." 18 U.S.C. § 1961(5). "'Racketeering activity,' in turn, is defined to 'encompass dozens of state and federal offenses, known in RICO parlance as predicates.'" *Equinox Gallery Limited v. Dorfman*, 306 F. Supp. 3d 560, 571 (S.D.N.Y. 2018) (quoting *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2096 (2016)). Defendants contend Plaintiff has failed to plead the required predicate acts with particularity. (Defs. Mot. at 9.) Plaintiff alleges wire fraud, 18 U.S.C. § 1341, mail fraud, 18 U.S.C. § 1343, and interstate transportation of stolen money, 18 U.S.C. § 2314, all of which are predicate acts under RICO. *See* 18 U.S.C. § 1961(1).

A plaintiff who alleges racketeering activity based on mail or wire fraud must prove "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)). Plaintiff also claims Defendants violated 18 U.S.C. § 2314, which, in relevant part, prohibits "transports . . . in interstate or foreign commerce any . . . money, of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud." Additionally, a civil RICO claim based on predicate acts that involve fraud must "satisfy the requirement that, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Lundy*, 711 F.3d at 119 (predicate acts of mail and wire fraud are subject to Rule 9(b)); *Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *18 (S.D.N.Y. Oct. 13, 2000) ("Where a violation of Section 2314 is pleaded as a predicate act in a RICO claim, those elements which involve fraud must be pleaded with particularity."). To plead fraud with particularity, the "complaint must adequately specify the statements it claims were false or misleading, give

particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).

The Court finds that Plaintiff has pled the predicate acts under RICO with particularity. The Complaint alleges that Defendants began a scheme to defraud Sandoz by making false and fraudulent representations in the debit memos as to the identity of the ASWs from which Defendants bought the products in order to receive reimbursements for non-refundable short-dated products, that Defendants used UPS Ground and FedEx/Genco to ship the nonrefundable products, that Defendants submitted debit memos to FedEx/Genco and received money from Sandoz through FedEx/Genco, and that FedEx/Genco is a commercial interstate carrier.  (Compl. at 6–7, 13–14.) Plaintiff has sufficiently pled these allegations against all defendants, including Individual Defendants, since Plaintiff has alleged that Individual Defendants were listed as specific contacts on the alleged fraudulent debit memos.  (*Id.* at 41.)

### b.  RICO Enterprise

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  An enterprise need not be a formal legal entity, nor must it have a "hierarchical structure or a 'chain of command.'"  *Boyle v. United States*, 556 U.S. 938, 948 (2009).  Rather, it may consist of "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven by 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  In pleading the element of

15

"enterprise" under RICO, a plaintiff need satisfy only the "short and plain statement" standard of Rule 8(a).  *City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272, 277–78 (S.D.N.Y. 2016) (quoting *D. Penguin Bros. v. City Nat. Bank*, 587 Fed. App'x 663, 666 (2d Cir. 2014)).

Defendants argue that the enterprise element was not sufficiently pled because Plaintiff "has failed to plead any facts demonstrating Reiss and Gorelick directed at Medwiz' affairs. Additionally, Plaintiff has failed to name any other individuals who were allegedly involved in the enterprise, and therefore cannot meet the heightened pleading standards for fraud as to those individuals." (Defs. Mot. at 13.)

As an initial matter, this Court clarifies that the pleading of the enterprise element of RICO is not subject to a heightened pleading standard.  *See Ablyazov*, 226 F. Supp. 3d at 277–78.  Next, the Court considers whether the Complaint sufficiently pled the existence of a RICO enterprise under Rule 8(a).  The Complaint alleges that Medize is a legal entity and that Reiss, Gorelick, and Unknown Members 1–10 each is a "person" under the statute who participated in the predicate acts.  (Compl. ¶ 105.)  Plaintiff also alleges that the individual defendants "conducted, participated in, engaged in, and operated and managed (directly or indirectly) in the affairs of Medwiz."  (*Id.*) Plaintiff further alleges that Reiss, Gorelick, and the unknown members share a common purpose of financial interests and maintaining its operations, that they were all employees and/or members of Medwiz, and that they constitute an enterprise during December 2015 to October 2017 for the members to steal over a million of Sandoz's money through fraud.  (*Id.* ¶ 106.)  Whether Reiss and Gorelick were, in fact, directing the affairs of Medwiz is a question of fact that not appropriate for resolution on a Rule 12(b)(6) motion.  Accordingly, the Court finds that Plaintiff has sufficiently satisfied Rule 8(a) through these allegations to plead the enterprise element of RICO.

### c. Pattern of Racketeering Activity

To meet the "pattern of racketeering activity" element, a plaintiff must allege that the predicate acts have "continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted).  This continuity requirement "can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citations omitted).

Defendants contend that Plaintiff has not pled either closed-ended or open-ended continuity of the alleged racketeering acts.  (Defs. Mot. at 15.)

### i. Closed-Ended Continuity

"A plaintiff may demonstrate closed-ended continuity by proving a series of related predicates extending over a substantial period of time." *Casio Computer Co.*, 2000 WL 1877516, at *11 (citing *H.J. Inc.*, 492 U.S. at 240).  The Second Circuit has held that a closed-ended scheme must extend at least two years, but this temporal period is "insufficient, without more, to support a finding of a closed-ended pattern." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).  Additional factors such as "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Id.*

Defendants note that Plaintiff only alleges RICO predicate acts to have occurred between December 2015 and October 2017, a period of approximately 22 months that "falls short of the minimum time period required to properly plead close-ended continuity."  (Defs. Mot. at 18.)

Plaintiff more broadly argues that the Complaint alleges fraudulent conduct "for about two years, from 2015 through 2017" and that such amount of time "is not merely limited to a mere few weeks or months, but rather, constituted a series of fraudulent acts over a period of years."  (Pl. Opp. at 18–19.)

Although the Second Circuit does not view the two years as a bright-line requirement, "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . the activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy."  *Spool*, 520 F.3d at 184 (internal quotations and citations omitted).  Plaintiff's allegations appear to fall short of this benchmark.  The Complaint alleges that the RICO predicate acts began in approximately December 2015 until October 2017. (Compl. ¶¶ 34, 38.)  The Complaint alleges these predicate acts were all part of Defendants' single scheme to defraud Sandoz of money by returning non-refundable products.  This 22-month period is insufficient to establish a close-ended continuity, "particularly in absence of separate schemes or large numbers of participants and victims."  *Spool*, 520 F.3d at 184 (citing *DeFalco*, 244 F.3d at 322); *see also Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 694 (S.D.N.Y. 2001) (finding 22-months of a single-purposed scheme insufficient); *Niles v. Palmer*, No. 97 Civ. 7573, 1999 WL 1419042, at *7 (S.D.N.Y. Oct. 22, 1999) (finding 21-months insufficient).

Accordingly, Plaintiff has failed to plead a close-ended continuity of racketeering activity.

### ii.  Open-Ended Continuity

"Open-ended continuity, on the other hand, does not require a substantial temporal showing, but requires a plaintiff to show a threat of ongoing criminal activity beyond a period in which the predicate acts were committed."  *See Jordan*, 154 F. Supp. at 694.  In the Second Circuit,

the courts first look to "the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed. *DeFalco*, 244 F.3d at 323. The threat of continuing criminal activity is "generally presumed when the enterprise's business is primarily or inherently unlawful." *Spool*, 520 F.3d at 185. When an enterprise primarily conducts a legitimate business, however, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.*

Defendants contend Plaintiff has not alleged open-ended continuity where (i) Plaintiff changed its returns policy in January 2018 in a manner that precludes Defendants from returning short-dated or final sale products, (ii) Plaintiff only alleged one, definitively terminated fraudulent scheme, and (iii) Plaintiff has not otherwise alleged Medwiz was engaged primarily in racketeering activity. (Defs. Mot. at 15–16.) Plaintiff argues that the threat of continuing criminal activity exists because the "nature of the predicate acts of Defendants taken against Sandoz, *i.e.*, the fraudulent inducement regarding the reimbursement of short-dated products and associated mail/wire fraud, may be inferred to be a continued threat not only against Sandoz but also against other drug manufacturers with similar return policies." (Pl. Opp. at 18.)

As an initial matter, the Complaint does not refer to a January 2018 revised returns policy. Indeed, on a Rule 12(b)(6) motion, this Court may only consider "the documents that are asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2017). Thus, this Court may not consider Defendants' submission of an alleged revised Sandoz return policy, attached as an exhibit to their motion papers (ECF No. 22-1 at 5–7).

19

Nevertheless, looking only at the Complaint, the Court agrees with Defendants that Plaintiff has not sufficiently pled open-ended continuity.  The Complaint does not allege that Defendants engage primarily in racketeering activity.  Instead, Plaintiff argues that the allegations of fraudulent acts should infer that the nature of the predicate acts implies a threat of continued criminal activity.  (Pl. Opp. at 18.)  Case law makes clear that fraud does not fall within the "inherently unlawful" category so as to imply a threat of continued criminal activity.  *See Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 611 (S.D.N.Y. 2015); *Int'l Bhd. Of Teamsters v. Carey*, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("fraud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context"); *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 516 (S.D.N.Y. 2007) ("While embezzlement, extortion, bribery, and money laundering are in pursuit of inherently unlawful goals, fraud is not.").  Thus, the Complaint's allegations of fraudulent conduct, without more evidence, do not infer the predicate acts were a continued threat.  The Complaint does not offer other evidence from which it may be inferred that the predicate acts were the regular way of operating Medwiz's business.  Accordingly, Plaintiff has not pled sufficient facts to allege an open-ended continuity.

Because Plaintiff has not sufficiently pled a pattern of racketeering activity, Defendants' motion to dismiss the RICO claim is granted.  Plaintiff's RICO claim is dismissed without prejudice.

### V.        Attorneys' Fees

The Complaint asserts attorneys' fees as the fifth cause of action brought against Defendants.  (Compl. at 21.)  Defendants ask for this count to be dismissed because Plaintiff has not demonstrated an entitlement to such fees.  (Defs. Mot. at 18.)  Plaintiff claims it is entitled to attorney's fees pursuant to the RICO cause of action.

The Court notes that attorneys' fees are a potential form of relief rather than a cause of action.  To the extent that Plaintiff attempts to assert attorneys' fees as a cause of action, as indicated on the Complaint, this fifth "cause of action" is dismissed.  Furthermore, because the Court finds that Plaintiff has not sufficiently pled a RICO claim, Plaintiff is not entitled to any attorneys' fees under RICO.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion is granted as to Plaintiff's RICO claim and as to the "fifth cause of action" of attorneys' fees.  Accordingly, Plaintiff's RICO claim is dismissed without prejudice, its "cause of action" for attorneys' fees is dismissed with prejudice, and all other claims remain.

Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice.  If Plaintiff chooses to do so, Plaintiff will have until February 2, 2022 to file an Amended Complaint.  Defendants are then directed to answer or otherwise respond by March 4, 2022.  If Plaintiff fails to file an Amended Complaint within the time allowed, and it cannot show good cause to excuse such failure, any claims dismissed without prejudice by this order will be deemed to be dismissed with prejudice.  If no Amended Complaint is timely filed,

the parties are directed to complete and file a Case Management Plan and Scheduling order by March 4, 2022.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 22.

Dated:  January 12, 2022                        SO ORDERED:
        White Plains, New York

                                        _____
                                             NELSON S. ROMÁN
                                          United States District Judge